Our next case is Hopper v. Belkin Intl. Mr. RIPPLE May it please the court, my name is Rob Ripple and I'm here today on behalf of Optimum Path. In this appeal we have two objectives today. The first objective is to ask this court to revisit the claim construction. We believe the claim construction is flawed and by way of preliminary example, it reads limitations into the claim which are not supported by the text of the patent itself. By way of another preliminary example, it's self-contradictory. The definition of channeling controller says that it's not capable of dynamic routing. But another ruling by the court says that the term route means dynamic routing. Those rulings come head to head. So there are some serious problems with the claim construction. And we think that the claim construction, as sometimes happens, bled over and infected the rulings on invalidity and infringement. Our second objective today is to ask this court to take a hard look at the summary judgment rulings on both invalidity and infringement. The question for the court was not whether there was evidence which supported summary judgment, but whether there was evidence which did not support summary judgment. And the answer to that is there are legitimate factual disputes,  And finally, there are some procedural irregularities with the court's order and the process the court went through in arriving at its decisions. I'd like to begin by talking about the claim construction. Again, the purpose of claim construction is not to read limitations into a claim to avoid a factual inquiry. It's to find out the true intent and meaning of the patent. And with that focus, I think it becomes clear that the claim construction is flawed. There are essentially three terms for disputing that. Probably the key here is removable, right, Mr. Reibold? Absolutely. With respect to the definitions of cards and chastity, removability is the key inquiry. One point I'd like you to address is the discussion of card versus chipset. A card being used in the art of something which is removable, and a chipset being the term used when you're talking about something that is fused into the board. Are you stuck with that? I don't think we are stuck with that, Your Honor. My understanding is that initially these wireless interfaces were done using printed circuit boards or cards, but that term has stuck, even though most people today would understand that a chipset or circuitry which performs the same function in the same way is in fact a card. But what people would understand today is not really the question. We have to ask what people would have understood at the time of the application. I understand that, and our expert testimony that we submitted explains that at the time of the patent, the understanding of someone skilled in the art would have been that the term card included circuitry and or chipsets. But there are a series of electrical engineering and computer science dictionaries that seem to suggest that card has a distinctive meaning, and that meaning encompasses removable and not integrated. Setting aside for the moment the manual and the other related product description of the defendant, setting those aside, the dictionaries do seem to be pretty consistent. I think dictionaries are consistent, but I don't think the dictionaries say what the defendant suggests that they say. Every single definition cited by the defendants in the dictionaries refers to a card being plugged into the motherboard. That means inserted. There is no subsequent reference in any dictionary. But when you speak of adding something so continuously as you do in the specification, doesn't that kind of assume that you can also un-add it or remove it? I don't know that that assumption is fair, Your Honor. Adding and removing, and that's why it's a card. Isn't that the point of the specification? Well, the reason that it was originally called a card was because of the shape of the printed circuit board and nothing else. I don't believe that it's fair to read, to add the word remove anytime you see the word add. Certainly that's not, there is nothing in the text of the patent, nothing in the text of the definitions which suggests the patent requires the ability to subtract an element or to decrease or to take away or to remove. Those words don't appear anywhere in the patent. So if you're trying to say add means remove, I think that's an additional suggestion being read into the specification of the patent. All right, I'll return to the issue of removability. I'll focus more on that because that is key to both the claims of the wireless network cards and the chassis. And removability, we believe, as I've said, isn't stated anywhere in the patent. There is no textual reference which suggests that removability is required. There is no textual reference which suggests that the ability to subtract or decrease cards is required. And there are two positive references in the patent which suggest an integrated card is appropriate. The first of those is Claim 9 which claims the wireless device of Claim 1 wherein all of the components, the processor, the network card, the wireless card are operatively disposed within the chassis. That's an embodiment where all the parts are inside the casing of the device. In other words, all cards in that embodiment are internal and integrated, not inserted through slots in the side of the casing. The second… Doesn't that suggest simply that you take the casing off in order to remove the cards? Well, Your Honor, what it suggests to me is that the cards were internal. Well, I mean, but there's a difference between their being internal, if they're not, and their being integrated. That is to say, you could still have them to be plugged in and plugged out. You just design the device so that it has a casing that encompasses the plug-in and plug-out cards as well as the rest of the… I think, in fact, that's one of the points I make with respect to the chassis. Well, I understand that's a separate issue with respect to whether the chassis has slots, necessarily has slots. But focusing just on the question of whether the cards are removable, it's not clear to me why the fact that they can be within the overall chassis, if chassis means the outer covering, it's not clear to me that that means they're not removable, the fact that they're within the chassis. Well, Your Honor, I think that you hit upon a salient point. I don't know that the fact that they're disposed within the chassis requires them to be integrated, but I think it certainly contemplates the possibility that they'd be integrated. And our position has been all along that cards can be either, and that so therefore a requirement that the cards be removable is an improper limitation. And the other area which discloses an integrated card is obviously Figure 2, which is discussed in great length in all the parties' briefs. Figure 2 is a drawing, and the question what Figure 2 discloses is, begins with a brief description of the drawings, which says that Figure 2 is intended to be a two-slot wireless device in accordance with the present invention. So Figure 2 is supposed to be a depiction of the invention. The invention claims, as a specific element, a network card. But when you look at Figure 2, what you see is a two-slot device, and you see two wireless cards in the slots. In fact, they're labeled wireless in the picture. A1 and A2 are the two cards in the picture, and then below that, where you see the schematic showing how the antennas work, you see A1 is labeled as a wireless card, and A2 is labeled as a wireless card. If both wireless cards occupy two slots, the only place left for the required network card is inside the casing. So again, I think we have two disclosures that suggest integration is possible, and we have no disclosures that require it to be removable. So simply on the intrinsic evidence alone, I believe that any requirement of removability would be a problem. We've discussed the dictionaries, and I think the dictionaries actually support the proposition that integration is possible. The dictionaries submitted by defendants don't discuss removability. They only discuss insertion, and the two glossaries that were submitted by the plaintiff do suggest integration. They talk about wireless cards being built onto the motherboard. Clearly, that is an integrated card. Those glossaries are of significance, especially in this case, because they're published by the defendants in this case, one of whom has settled out, but one of whom, Datalink, is still very much a party. That's a party admission. That card can be integrated. Now, the next area I'd like to move on to is the chassis, and, of course, the chassis, as we discussed, is the casing of the device. There is, again, nothing in the patent which would require slots. Slots for cards, removable or otherwise, would be permitted, but it's not required. It doesn't have to be there. As you pointed out, Judge Bryson, the casing can simply be opened for cards to be added. Slots are not required. The primary... Well, of course, I guess that depends on how we define it. First of all, what exactly the chassis is. It wasn't clear to me whether the chassis is the outer covering, the housing, if you will, of the device, or whether it is invariably referred to as the outer shell, or can it be the innards of the machine itself. Is it clear that the patent defines chassis in one of those two ways consistently? Your Honor, our position at the trial court was that the term did not need to be construed because it was not ambiguous. Well, what does it mean then? The chassis is simply the outer casing of the device.  So you would say that it is the shell. If I have my tower computer and I pull the metal shell off and display all the innards, that metal shell is the chassis. It isn't the core integrated circuit that's within the outer shell. Yes. And I think if you look, there's a reference in there, and actually I was about to mention it, to the chassis of a personal computer, and it talks about the ability to add cards without changes in the chassis of the personal computer. Of course, this is a systems claim reference, but that clearly shows the chassis is talking about the outer casing of the device, the exact example you submitted. So there's no requirement that the chassis have slots. Certainly that is, again, a permissible embodiment of the invention, but it's not required by the terms of the patent, and it would be improper to mandate that every chassis have to have slots. But the specification talks about the user can add cards without the need for chassis changes. Yes, Your Honor. So you're going to have to have these slots, right? Well, no, I don't believe so, Your Honor, because that part of the specification is, and the reference to the chassis in that part of the specification, is not addressing the chassis of the wireless provision device. If you look at the next sentence of that quoted language, it says, because the system resides on the chassis of a personal computer. So when the patent is talking about no need for changes in the chassis, they're talking about no need for changes in the chassis of the personal computer in a systems claim. So that language simply has been taken out of context and does not support a requirement of slots on the chassis of the wireless provision device itself. Of course, the final element of claim construction is the channeling controller. The court construed the term routes, which has not been appealed in this case to require dynamic routing. Claim 2 of the patent specifically says the device of claim 1 where the channeling controller routes. Claim 3 says the device of claim 1 where the channeling controller routes. So there are specific references to the channeling controller performing dynamic routing. Yet the court said the channeling controller only performs bridging. So this is the conflict I was talking about earlier in the court's claim construction. Those two are not compatible. And I believe it is clear from the court's definition of the word routes and the repeated reference to the channeling controller performing routing, the channeling controller in the 281 patent must perform dynamic routing. Now, my time is getting short. I'd like to briefly touch on the invalidity issues, if that's all right. Sure. I think with my limited time, it might be easier to take a sort of macro view of the invalidity issues. This is a case in which both inventors testified in contradictory fashion. They disagreed with each other about obviousness. This is a case in which both experts testified in contradictory fashion and disagreed with each other about opposites. In fact, this is a case in which the trial court disagreed with the PTO about the question of obviousness. So from a broad view, I think it's easy to see why this is not a case which is appropriate for summary judgment or summary disposition on that question. But when you look at the details, it doesn't change the picture at all. It becomes more clear. But one important thing to keep in mind is that on the question of obvious, we don't really have an explanation of why the court considered the prior art to render the 281 patent obvious. We don't have explicit grant findings. We don't have specific identification of references which they thought should be combined. We don't have an explanation of how the prior art teaches, suggests, or motivates towards the incorporation of dynamic morality. So I think on those issues, summary judgment was clearly inappropriate and I can see I have no time left. Thank you, Mr. Reynolds. We'll restore to you two minutes rebuttal time. If you wish to have it. Your Honor, I did reserve five minutes. Yeah, but we'll give you two, all right? And Ms. Morales, you add two to her time so that it stays even. May it please the court. The district court's opinion can be affirmed on multiple grounds. We started here with claim construction and I wanted to focus on questions that the court posed to opposing counsel. In fact, the claim construction of three independent terms, each of which lead to an escapable finding of non-infringement, is amply supported by both intrinsic and extrinsic evidence. Well, let's look at removable for starters. Yes, Your Honor. The claim doesn't require removable, right? No, Your Honor. Where does the specification disclaim then? Your Honor, the removability. First of all, we do start with a claim of a note. There is no word removable. There is a term card. And card, by its plain meaning, is something that's separate. Secondly, we turn to the specification. We talked about card and chip a moment ago, and that weighs a little in your favor, but still when you're trying to impose something on the claim that isn't there, we usually require some disclaimer by the patent drafter. Do you find that anywhere? Your Honor, we find a couple of things in the specification. First of all, it refers to the present invention in column 9 of the patent, on page 87 of the record. Column 9? Yes, Your Honor. It's pages 61, 67. Yeah, I've got the column 9. Right. So the cases with Verizon versus Vonage and other Federal Circuit authorities suggest that when you say something is a present invention, that defines the scope of that invention. Here, the inventors are telling the patent office in the world that the purpose of the invention and what they're contributing is a flexible configuration router. What they're adding to the art, according to them, is a router that is capable of being reconfigured in multiple different ways by virtue of using removable cards. Yes, the word removable is not here, but if you look at page 25 of the appellant's blue brief, they actually concede that this portion of the specification talks about removability and not so many words in the middle of the page. We further talk about chassis in the slots and the concept of adding cards and taking cards out. The purpose of this invention was to... Well, it talks a lot about adding. It never talks about taking them out. Your Honor... I looked for that very specifically. That would have helped. Yes, Your Honor. The point here is that in order for you to reconfigure these routers without breaking the chassis and having to undo the whole thing and ripping out the chip, for example, you need to have ability to remove cards just as much as you need ability to add cards. The specification of 9 and continuing to column 10 talks about increasing number of potential customers connected to the device. If you want to decrease the number of customers not connected to the device, you should be able to remove cards. And let's look at the background of this invention. This is year 2000. They're talking about buying off-the-shelf equipment and increasing or decreasing the router to configure to the needs of small businesses and homes, which is how this invention came about. But it's further supported not by just specification but other evidence. Can you deal with claim 2 at some quick point because that also militates a bit against you, doesn't it? Your Honor, claim 2 concerns routes and channel control. Is that where Your Honor wants to go? No, I'm looking at removability still. We're talking about removability. I don't believe claim 2 is the issue here. If Your Honor means figure 2. Excuse me, I mean figure 2. Did I say claim 2? I'm sorry. Yes, Your Honor. Figure 2 actually supports it. The wireless card here is shown as removable wireless card. So with respect to wireless card, it fully supports defendant's position because the two wireless cards you see here are both depicted as removable. And this goes to the ICU case that we cited in our brief, which is where a spike is depicted as a spike, pointed spike, and described this way everywhere else. It is consistent. The argument, as you know, is that there's an implicit network card and that the only place for it to be implicit, since it isn't displayed here as a separate card, is integral. Yes, Your Honor. And what we argue to the district court, and what is a relevant argument here, is that figure 2 is most likely an unclaimed embodiment. There are cases by this court and others, such as TIP system, that say that there's plenty of unclaimed subject matter in the past. Whether they put it there for future continuations or some other purpose, but there's no evidence that figure 2 is actually claimed in claim 1. So it does not show non-removable network card. It does not show network card at all. So we submit to the court that this is simply an unclaimed embodiment. I want to touch on a couple of other claim construction points counsel brought up. Let me ask you again about that. It struck me, and I really did not fully understand what figure 2 is depicting within the entire operating event, but it struck me that one possible interpretation of figure 2 would be that this is a part of a larger device and that it wouldn't speak the fact that there aren't any network cards or network integrated feature. It wouldn't speak to whether the invention itself uses cards or an integrated system. Is that a way of reading figure 2, or is figure 2 intended to be the entire structure? Your Honor, it's hard to decipher because it's highly ambiguous what exactly it depicted, but one possibility is that it's not connected to network at all. You simply have one wireless card in and wireless card out, basically. So I don't think I considered the possibility created by Your Honor, but the figure 2 is not self-explanatory nor is it described in the spec to draw that conclusion. Returning briefly to the points made by counsel regarding dictionary definitions, defense incited multiple dictionary definitions to support their position that card, at the relevant time frame, in 2004, was viewed by everyone as a removable card that can be plugged in. The only thing that counsel relied on is actually not relevant to wireless card at all. OptumPath cites two defendant's manuals that are basically marketing literature created for non-technical audience, created years, two to eight years, after the critical date. And to the extent that the court is at all interested in those manuals, they only talk about network card. But again, the critical point there is that in contrast to dictionaries that's been deemed important and useful extrinsic evidence, these are product manuals that well post-date their relevant timeline. So to sum up, with respect to wireless card, we have claim limitations that show that it's removable. We have specification. We have admission by point-of-phone experts that she could not find any extrinsic or intrinsic evidence supporting her construction. And I refer the court to record at page 787 and pages 17 to 21, where the expert gives that admission in the deposition. And finally, plaintiff also argued in a different patent application, which we refer to as 592 application, where they contrasted the integrated chip of that application with the removable wireless cards and network cards of the 281. We discussed that at length in the brief, and I can comment further, but this is a very substantial evidence supporting the court's claim of construction of wireless cards. The other two points, chassis and network card, are equally supported, but because we have additional limitations, unless the court has questions about them. How about claim 9 and its effect on the easing of the chassis? Yes, Your Honor. First of all, this operatively disposed within the chassis was never argued to the district court and was brought for the first time in this court, which is inappropriate under doctrines of waiver. But on the merits of that, you can have a chassis with slots with the cards actually disposed within the chassis. They can either be plugged in and outside the chassis or plugged in or within the chassis. That language does not in any way change the nature of the card and network card and their ability to be plugged in. Well, but the question is, what does it say about whether the chassis has to have slots? Your Honor, we contend the chassis does have to have slots. I understand that is your contention. Why is it that claim 9 doesn't cut against that contention in as much as if the chassis completely envelops the cards, presumably it wouldn't need to have slots. Is that a fair inference from the structure depicted or claimed in claim 9, or is that not?  Right. But still has slots. It just wants to plug them through that slot. They're subsumed within the chassis. And the theory being that you have to reach into, through the slot as opposed to having the cards poking out through the slot? You can do that, or you can even unscrew the chassis. The point is that you would be removing the card and replacing it easily as opposed to ripping it out the way you would do with a chip, for example. But if you remove the chassis altogether, you don't need the slots, right? That's true, Your Honor. But you can actually remove through the slots as well. The point here is the critical distinction between integrated chips that once you install, soldered onto the motherboard, you cannot add or subtract. I understand that. I'm really focusing on the chassis as opposed to the removable feature. That's what I thought the argument about claim 9 was mainly directed at. Now, your response may be that you don't need the construction of chassis as long as you get removable, but still, that does seem to bear, at least to some extent, on the meaning of chassis vis-a-vis the slots. Your Honor, again, it's hard to imagine what the court would have done with this particular argument because it was not presented to the court. But nonetheless, there is a possibility to have chassis with cards subsumed and still have slots. Moving on to the channeling controller, which is another limitation that's now relevant to integrity of the case. Counsel brought up the issue of claim 2 versus claim 1 in the court's construction of the term routes. It would be important to give the court a very brief history of this claim construction dispute. Originally, plaintiff argued that channeling controller is something that either routes or bridges. They changed that construction immediately upon seeing defendants in validity brief and realizing that they're in trouble with prior art. Their new construction deleted bridges and included simply routes. Defendants, by contrast, relied on the plain language of claim 1 with respect to channeling controller. And one of the reasons that it's appropriate to look at claim 1 is what plaintiff did in the prosecution history of this patent. There was an indefiniteness rejection because the examiner said, I don't understand what channeling controller is. To overcome that indefiniteness rejection, plaintiff said, it is exactly what it says. It channels the inbound packets based on the inbound address and then constructs packets and sends them out. Based on that, they're now held to this definition of channeling controller. So how do we resolve the issue between claim 1 and claim 2? And that's very simple. Claim 2 is a dependent claim that has to be narrower than the independent claim. So the channeling controller should be broader than something that routes or bridges or does anything else. Channeling controller of claim 1 is a component that can do various varieties of tunneling, forwarding. It is basically a more rudimentary version of either router or a bridge. It does not have to have a routing or a bridging limitation in that claim. Channeling control is properly construed and there is absolutely no conflict with claim 2. Now, with respect to claim 1, the actual claim construction does not matter for the prior art analysis because we've demonstrated ample evidence below that both prior art pieces that the court reviewed as well as the one the court did not had dynamic routing, which is what plaintiff says is necessary. So even if this court decides to adopt a different claim construction than what the court adopted below, the invalidity still stands. And we supplied enormous record below. We've given the court testimony of prior art source code, change logs. We've lodged actual routers with the court. We have expert testimony. If there's any case where a court could give a summary judgment of obviousness, it has to be this case. There was concessions by the experts on the other side. There's numerous reasons why this case supports obviousness determination. In particular, the ISP base station is the first piece, prior art product, that the court reviewed. And the only dispute below was, was there a channeling controller? Once the court construed that the channeling control did not have to include dynamic routing, it wasn't a very difficult decision thereafter. But even if this court determines that there should be dynamic routing as part of the claim construction, we have ample evidence in the record to support the conclusion that there was dynamic routing because Doug Carl, the prior artist, showed a number of documents illustrating that there was RIP routing information protocol, which plaintiff's expert. The RIP protocol, did you say? Yes, Your Honor. That the plaintiff's expert herself admitted was dynamic routing. I see I'm low on time, so I would like to see if there are any questions with respect to the procedural improprieties of plaintiff's doctrinal equivalence claim. We believe that defense is squarely within this court's Amgen versus Genentech case, where a party intentionally failed to plead doctrinal equivalence in their local rules disclosures. If you would address, I know you don't believe it's absolutely essential for us to resolve this question of the meaning of routing in order to resolve the invalidity question. But I would like your views as to whether there is an inconsistency in the way that the district court characterized routing as being either dynamic or not necessarily dynamic, presumably static routing. Your Honor, we don't believe there's inconsistency because Claim 2 is narrower than Claim 1. So routes, according to the court, includes dynamic routing. Includes, but is not limited to, in your view? Well, to satisfy Claim 2, you have to dynamically route. But Claim 1, you don't have to. Claim 1 can be satisfied by one of many different ways of transmitting information via channeling controller. And plaintiffs in their briefs talk about FM versus AM radio. And it's actually an analogy that supports defendants, not plaintiffs. And the reason for that is you can have a radio, for example, a ham radio, a shortwave radio, that is a very simple way of transmission. It doesn't go AM or FM. Or you can have a radio that is more sophisticated and goes AM or FM routes. So in our view, there's no inconsistency in the court's claim construction. And the term routes is not actually at issue in this appeal. OK. But if I were to ask the district court, what does the word routes, as it's used in this patent, mean? The district court would tell me what? I believe the district courts have treated it as dynamically routes. Dynamically routes. All right. Let me double check the. Right. But you contend that dynamic routing for purposes of invalidity is not necessary. So that appears to be a tension between those two positions. Your Honor, it's not necessary for Claim 1. I understand that. But I'm really trying to see if we've got an issue here with respect to an inconsistent usage. If we do, your answer may be that it doesn't matter. But I'm trying to see if the plaintiff and the appellant is correct in saying that there's an inconsistent usage. Your Honor, there's no issue with inconsistent usage here for a couple of reasons. One is that the court specifically found that even if dynamic routing were to be required by channeling control, it's present. But the question is, what did she do? She found factually on undisputed record that ISP-based patients, for example, had dynamic routing. I understand.  What I'm trying to ask is, you seem to say that it isn't necessary for purposes of invalidity for you to show that there's dynamic routing, even though you say you do show that, but you say it isn't necessary. But you seem also to be saying that the court construed the claims to require routing to be dynamic routing. There seems to me to be some tension between those two issues. Am I wrong? Your Honor, the only place where the court touched on that would be Claim 2, where it does route, but not Claim 1. Right. And is there some tension with respect to Claim 2? Do you understand my question? Your Honor, the best I understand your question is that you are trying to reconcile Claim 1 and Claim 2, and how you can require one meaning in one claim and then channel and control another claim. Is that correct? No, really. I have a much simpler inquiry. That is, in your view, are you taking the position that routing, for purposes of the entire patent, means something different from what the trial judge said routing means? Your Honor, routing routes, the word routes only appears in Claim 2. It does not appear in Claim 1. Right. And you say it means dynamic routing. Correct? Is that your position, that it means dynamic routing, when the word routes is used in Claim 2? Your Honor, that's the court's construction. But is it your view? I believe we argued something different below, but the court ultimately said on page 14 of the court order. But now, what is your position now? Our position is, to the extent Claim 2 requires dynamic routing, we're satisfied with the argument. But you're not willing to say, you're not willing to take a position as to whether it requires dynamic routing or not. Your Honor, because that's the court order, I'm not going to argue with the district court order, which would not brief or appeal. OK. Thank you, Your Honor. If there are no more questions. Thank you, Your Honor. Thank you. I'd like to briefly begin by addressing some of the points that opposing counsel made during her presentation. And to start with, I'll go to Figure 2. And what Figure 2, the argument that I heard from Figure 2 is that it was an unclaimed embodiment. And therefore, we can disregard what Figure 2 has to say. I don't think that's an appropriate interpretation. The case law that's been cited deals with situations where the figure claims more than the patent language in the claim itself. This is the reverse. They're trying to argue that the figure shows less than the necessary elements of the claim language. So I don't think the authority that's been cited on that issue is appropriate at all. There's no reason to interpret Figure 2 as having less than all of the necessary elements, the minimum necessary elements of the claim. In fact, Figure 2 is described in the patent as an embodiment of the present invention, which implies it should have at least the minimum requirements of the present invention. Briefly, you were directed to the 592. And so your argument is that the network card not shown would have to be integral. Correct. It has to be inside the router, which is the casing depicted in Figure 2. And the 592 patent application, you've also been confronted with that. And again, I think that's a misunderstanding or misreading of the patent application itself and the related prosecution history. What that application says is that in the 592, the device can be alternatively configured with chipsets so that the entire device itself can be reduced, miniaturized onto a single chipset. The 592 prosecution history does not discuss or mention cards in any way. The reference to the alternative configuration is a reference to the configuration of the device as a whole, not as to any specific component of the 281. So I don't think that the 592 is relevant at all to this discussion. And in any event, it can't overcome the intrinsic evidence that I've cited, Claim 9, Figure 2, and the lack of any specification of removability in the patent language itself. You've also been told that it's undisputed that the prior art had dynamic routing, and you've been directed to the ISP base station. And I will tell you simply that it is disputed. That evidence, the evidence cited by the court and relied upon defendants, is Doug Carl, the inventor of the ISP base station, which, by the way, is a piece of software being used to try to invalidate an apparatus claim. But Doug Carl says in one place in his deposition that his software had RIP, Routing Information Protocol. Defendant's expert says in her deposition that RIP, in the technical sense, is dynamic routing. The problem is that Doug Carl's statement about RIP is in dispute for two reasons. One, he makes contradictory statements in other parts of his deposition. He says that the software he sold to ISP service providers prior to September 1999, which is the month of the critical date, had only bridging. That right there is a contradictory statement that undermines his assertion that his software had RIP and should be enough to create an issue of fact or summary judgment. But there's more. Doug Carl testified that his relationship with Lucent, which began before 1996 and continued thereafter, became so intertwined that Lucent had his original source code. However, the Lucent manuals, the waypoint manuals for Lucent products, describe their product as only having bridging. If Lucent had Carl's source code and Lucent's products only bridged, then the inference which should be drawn in my client's favor on summary judgment is that Carl's source code only had bridging. And you've got a similar inference with respect to the Apple. The e-mails and log entries that the defendants have submitted and Doug Carl prepared say that or mention only NAT, which is network address translation, in the software going to Apple in the month of September, which is of course the month in dispute. Do you have a final thought for us, Mr. Reichelt? Yes, Your Honor. In conclusion, I'd simply like to say that we'd ask you to revisit the claim construction and we believe that the procedural safeguards for summary judgment on invalidity were not followed. We don't have explicit grant findings. We don't have definitions of level of skill in the ordinary art. We don't have any information about why the court thought combining references was appropriate. And I do think there are underlying factual disputes on both the Apple airport and the ISP base station which prevent summary judgment on invalidity. Thank you. Thank you very much.